Good morning, Ben Coleman from Mr. Redmond. What I'd like to do is address the sufficiency claim and if I have a minute at the end to discuss the sentencing claim. And with respect to the sufficiency claim, I think there are three questions. The first is, did the government present sufficient evidence at the trial? If the answer is no, then can this court and should this court take judicial notice of facts on appeal? And if the answer to that is yes, then whether what the government has submitted, whether that is... Is that in place to the jurisdictional question? Yes. Okay. So are you aware of U.S. v. Corey? No. Okay. It wasn't cited in either your brief or the government's brief. But in 2002, we joined the Fourth and the Sixth Circuits in holding that all you have to show is control and dominion. The case was missed by the Second Circuit in 2013 in Davis. And in 2010, a court in the Central District of California held, following Corey, that Victorville is controlled by the federal government. And that is sufficient to show jurisdiction. So it's a very lengthy opinion. It's a split decision by the court, but there's substantial discussion. So I'm not sure how that ought to alter your argument, but it seems to me that it ought to shape it in some way. Well, I certainly would like the opportunity to obviously take a look at Corey and submit a 28-J letter to see if there are any ways to either distinguish it or to argue that it didn't consider arguments that we considered. So I'm a little blindsided by that. I'll move to some of the other claims. I just really don't know. I mean, you're welcome to use your time in any way that you see fit. But I'll represent to you that Corey adopts Blunt and I think it's Erdos, the Fourth Circuit case. Blunt is the Sixth Circuit's standard. And again, the Davis case in 2013 misses it entirely because it arguably creates a split in the circuits. So recognizing that you're not familiar with this case, but assuming that that's correct, that all that the government had to show was practical usage and dominion enjoyed by the United States, do you agree that there was enough evidence to show those factors? Well, it sounds like it. I don't know why you would create a standard that says practical usage or dominion. I mean, the specific statute itself says that you have to have either exclusive or concurrent jurisdiction. In Corey, one of the things, these were overseas facilities. One of the facilities was a building in the Philippines being rented by the State Department for its employees, and we held that that was sufficient to satisfy the statute. Well, I would obviously see a very, I mean, it sounds like that's a foreign property. Yeah, but it's a rental building. Well, it certainly seems to me that, you know, now you're probably, you might be moving away from the typical prison facilities on United States soil for which a proper effectuation. But if it's control and dominion, there's no question the United States is exercising control and dominion over the prison in Victorville, right? I mean, that really is not in dispute, is it, counsel? No, no, I'm not saying it is. What I'm saying is I don't know why you would articulate a control and dominion standard when the statute itself says that there has to be. Well, you can take that up with us en banc, but I think our panel is probably bound by our prior decision. All right, well, you know, I don't want to, I obviously, I'll take a look at Corey, C-O-R-E-Y. C-O-R-E-Y. C-O-R-E-Y, and I will, if there's any way I can distinguish it, I will, and then I'll move on to the other two claims. The first, I'll take the sentencing claim first. Well, maybe you want to address Judge Acutis what I thought was Judge Acutis' question. Assuming that that is our standard, then has the government shown enough here? I think yes. I just don't, like I said, I disagree with that standard. But assuming that is the standard, I mean, the penitentiary is. They're running the prison, basically. What's that? They are running the prison. Yes. That's what you're getting to. Right. I just, I'm surprised that that standard was articulated contrary to the very language in the statute, and it sounds like perhaps there's a difference between a location on foreign soil versus a location within a state, because a state itself has to see jurisdiction, and that's the problem. The foreign, there may not be, with respect to a foreign country, a record. Well, that's what the Second Circuit said, but it's not what the Fourth or the Sixth Circuits held. Well, the Blount case was a, I mean, again, the Blount case, which was cited, that was a case where the witnesses actually testified that the prison sat on federal land, that the state had ceded jurisdiction to the feds, and there was that type of testimony in that case. Yes, but they articulated a different standard. They articulated a control and dominion standard, and that would clearly satisfy a control and dominion standard. Okay. Well, I. Well, since we have this established law, let's move on, and why don't you address your next two issues, and then if you want to look at the case and submit a supplemental brief, or supplemental letter brief, I'm sure that's fine. I appreciate that opportunity, Your Honor. Well, I'll move to the second claim then, the jury instruction claim first. We have a dispute about whether there's waiver or forfeiture there. It's our position that there wasn't a known and intelligent waiver in this case. It should be a forfeiture, and also the district court didn't hold the final Rule 30 conference at the end of the trial, so that's another reason why this court should at least review for plain error. It's our position that the instructions were plainly erroneous. All they required was an intent to kill. It's clear based on statutory law and case law dating back decades, if not centuries, that for murder you need to have an intent to kill with the requisite malice. There was no instruction on malice in this case. The cases I looked at indicated it was an intent to commit murder with the requisite malice, and the requisite malice or mens rea was intent to kill. So it did appear that you got those elements. The defendant had to be found guilty of the charge of the intent to commit murder with the intent to kill. That does appear to be the mens rea, or at least one of them, for malice. Why wasn't that enough? Well, I think it's malice of forethought. And so what else besides intent to kill do you think was missing? Well, number one, you need to have premeditated malice of forethought intent to kill. It can't be an intent to kill that arises either in the instance itself where a defendant, and that's on a sudden quarrel type theory, that you can have an intent to kill that occurs right in the heat of the moment, in the heat of the fight. So are you saying that's what's missing is a premeditation language? Yes, premeditation. And in addition, because we have a self-defense, defense of another situation in this case, an unreasonable defense of another would mitigate murder down to manslaughter. And certainly the defendant in his testimony believed that he was coming to the aid of his friend, of his cellmate. And a jury certainly could have found that although he might have felt he was aiding his cellmate, what he did was unreasonable. And that would mitigate an intent to kill from an intent to murder down to manslaughter. So we think — Counsel, if the word specific had been put before intent in the jury instruction, would that satisfy you? With a specific intent to kill? The cases in sort of common law use that phrase quite a bit. It would be better. I don't think it would be sufficient. I don't think a jury would understand specific intent to kill means premeditated malice of forethought, intent to kill, and would understand the difference between unreasonable self-defense and reasonable self-defense. It would be a step better, specific, but that's a — I mean, the courts have struggled with the term specific intent for years, so I'm not sure a jury would have — that would have done the trick, but it would have been better. Finally, I did want to move on to the sentencing claim. I think the government forthrightly cited a case called Fosberg in their brief, which is a very similar situation, which says that in this type of instance, a court cannot pyramid the penalties to extend the statutory maximum for a single course of criminal conduct. And the Supreme Court, in a case called Prince, this court sitting in Bonk, in a case called Palafox, have all sort of adopted that standard, which is that if a single statute articulates multiple levels of penalties, just the highest maximum applies for a single course of criminal conduct. So was Prince superseded by Albernaz? I don't think so. It dates Albernaz, and Albernaz gives some pretty specific instructions about how we discern Congress's intent. Right, and Albernaz dealt with two different statutes that were entirely different subchapters of a title of the United States Code. Here we're talking about a single statute, and, I mean, Palafox, I believe, comes out — On Palafox, there was a list of offenses and then a single punishment, as opposed to here, there was a different punishment for each of the offenses. Does that make a difference? I don't think so. I mean, this court also has a — in addition to Palafox, it has another case, which we cited in the 1324 context, where they have different punishments within the same statute, and this court still held that you can't pyramid the penalties in that manner. So I don't think that that makes a difference. I see I'm out of time. Thank you, Counsel. Good morning, and may it please the Court. Suresh Appleby Bhattacharjee for the United States. To the extent defendant has the opportunity to submit a 28-J letter on the Corey case, which the Court cited, the government would appreciate the opportunity to respond to that, and it appears that if this Court's standard — Do you cite Corey? We did not, Your Honor. What did both of you miss, Corey? Yes, I think that's correct, and under the case law that the government cited, we believe — It's a November 2000 case. Yes. The government cited to the Smith case and the Warren case is compelling the same conclusion as Corey, albeit in a slightly different context. To the extent Corey sets the same standard that the Tanner case in the Fifth Circuit set, which is practical usage and dominion, defendant appears to concede that on the factual record here, the government has satisfied that standard. I would say that under the Warren case, the only way defendant attempts to distinguish that case is by cabining it as an instructional error case, but that distinction doesn't really withstand scrutiny if you look at the facts of the Warren case. There, the district court failed entirely to instruct the jury on the necessary jurisdictional element, and this court held that reversal of the conviction would be the presumptive outcome unless the government could establish the instructional error was harmless beyond a reasonable doubt. And on nothing else than the uncontested testimony of government witnesses that the crime occurred on an Army base, this court found the instructional error harmless beyond a reasonable doubt, meaning that the conviction there withstood scrutiny under one of the highest standards of appellate review. Here, under one of the most deferential standards of appellate review, whether we call it de novo or plain error review of a sufficiency challenge, to the extent this court deems that the sufficiency challenge was not waived, Warren compels the same conclusion here, namely that there was sufficient evidence of Federal jurisdiction. I'd like to turn, if the Court has no further questions on the jurisdictional issue, to the instructional error claim. And I'd like to start with the government's contention that this claim was waived here. There's the authority that the government cited, United States v. Cain, which is squarely on point. There, as here, defense counsel signed jointly proposed instructions that modified patterned instructions in order to account for the same case law defendant claimed on appeal rendered the modified instructions erroneous. And this court held on those facts in the post-Perez, post-Alano framework of forfeited versus waived errors that the claim was deemed waived. The same conclusion ought to follow here. Now, to the extent the court reaches the merits of the instructional error claim, the parties do not dispute here what standard of review should apply, which is, at most, plain error, which means that the defendant first has to establish that there was a clear or obvious error with the instructions. Here, of the various cases on malice that the parties cited, one case stands apart as the most doctrinally rigorous examination of what constitutes malice of forethought, and that is the Pineda-Dovall case. And Pineda-Dovall categorizes four different species of malice of forethought, the intent to kill, the intent to commit serious bodily injury, depraved heart, and the intent to commit a felony. When we said intent to kill, did we use the word specific? Not in Pineda-Dovall. Because in many of the cases we do, we say that murder is the specific intent to kill. And the word specific is left out of here. Mr. Coleman says, well, that might have satisfied it for a bunch of lawyers, but maybe not for a jury that wouldn't have understood the difference between general intent and specific intent. But it does look like the word specific maybe should have appeared in this instruction. And perhaps it would have been more prudent for the parties to have modified the pattern instruction to include that word specific. But here the parties jointly read the Jones case, read the Jones case to require an intent to kill as being sufficient to distinguish the malice that is required to prove up assault with intent to murder, and intentionally omitted a definition of malice that would include depraved heart. And that's the problem that was at issue in Jones. So opposing counsel now says that premeditation should have been instructed on. And doctrinally, I would dispute that, Your Honor, because premeditation now we're talking about the different grades of murder. That premeditation plus the intent to kill is what would distinguish first degree murder from second degree murder. And here under 18 U.S.C. 113a1, the object of the offense is just murder. It doesn't the statute does not delineate between first and second degree murder. And so applying Pineda-Dovall, Pineda-Dovall says that intent to kill qualifies as malice of forethought. Here the jury is specifically instructed that it cannot find guilt unless it finds defendant acted with the intent to kill Garrett Rushing. And, Judge Biby, to your question, while the word specific is missing, and the government agrees with that, the ---- instruction that it uses in this case, does it contain the word specific? I'm not aware of whether the government in other cases charging this offense has a standardized instruction. What I can say, I was trial counsel in this case, and I can speak to the fact that the parties looked at the pattern instruction here, which is Model Instruction No. 8.6, which just says that the defendant acted with the intent to commit murder, and the parties had assessed the state of the case law. They found Jones. They believed that using the word intent to commit murder would be too vague in light of Jones, and then specifically modified the pattern instruction to say there had to be the intent to kill the victim, Garrett Rushing. And that, the government submits, is more than enough to avoid the issue raised in Jones.  In the Hinton case, which is cited in the answering brief, and in the Hinton case, the district court issued instructions on malice of forethought that fell into the same exact problem that Jones identified, and there, under plain error review, even though Jones squarely rendered those instructions erroneous, this court declined to reverse under plain error review, finding, even in light of Jones, that the error was not plain. Here were the instructions avoid the pitfall identified in Jones, which is namely giving the jury an opportunity to convict on less than a showing of the intent to kill. The court should reach the same conclusion. And so I'd like, unless the court has any further questions on the instructional error point, to turn to the sentencing merger issue. And here, it's true. There are two specific cases that are set up in tension with each other, this court's 1965 decision in the Forsberg case, and the Supreme Court's 1981 decision in the Albernaz case. Now, starting with Albernaz, Albernaz stands for the two propositions that are especially relevant here. First, that the rule of lenity has no application unless the statutory scheme is deemed ambiguous. And second, that Blockberger and the Blockberger test operate as a rule of statutory construction. And so if two offenses are deemed separate under application of the Blockberger test, Albernaz says there is a presumption of congressional intent that the state has no intent to authorize successive punishments. Now, Forsberg is decided at a time that Albernaz is not the law of the land. But what about Palafox and Sanchez-Vargas that were decided after Albernaz? I believe Palafox was decided pre-Albernaz. Was it pre? Yes, Your Honor. And again, to see whether Forsberg should control here or Albernaz, there is another case that should be read in conjunction with Forsberg, which is the D.C. Circuit's decision in the Ingram case decided in 1965, the same year as Forsberg, citing the exact same authorities on the same issue and reaching the same conclusion regarding merger of the two assault offenses, assault with intent to murder and assault with a dangerous weapon. And what's important about Ingram is the dissenting opinion there, which was penned by then-Circuit Judge Berger, who articulates the rule that is adopted by the Berger Supreme Court in Albernaz 16 years later. Namely, that Blockberger is a statutory construction rule, and if two offenses are deemed separate under Blockberger, that means that there is a presumption Congress intended to authorize separate penalties for those offenses. And in dissenting in the Ingram case, then-Circuit Judge Berger said that the proper application of the Blockberger test would flip the outcome and that consecutive punishments for assault with intent to murder and assault with a dangerous weapon should be authorized. And following Albernaz, the faithful application of the Albernaz-Blockberger test has led even this Court to find that the various assaults that are criminalized under the separate subsections of 113A are separate offenses that are subject to consecutive punishment. That's the conclusion of the Decoteau case, which granted does not deal with assault with intent to murder, but deals with assault with a dangerous weapon and assault resulting in serious bodily injury. And so faithful application of the Albernaz case should settle the issue presented here, which is namely that because each of the assaults that defendant was convicted of here requires proof of a unique factual element that raises the presumption that Congress intended to authorize separate punishments, and therefore the total sentence that was imposed here should be left to stand. I see that I'm just about to run out of my time. Unless the Court has any further questions, I'll submit. Thank you, counsel. Thank you. Did you have anything further? I know I'm out of time, so I'll just say both Powell-Fox, the Mbank case, and Sanchez-Vargas were both decided after Albernaz, and they both said that the difference is that when you're talking about multiple penalties in the same statute that Albernaz doesn't apply. Instead, the Supreme Court's decision in Prince applies, and you can't pyramid the penalties. All right. Thank you very much, counsel. United States v. Redmond will be submitted.
judges: Wardlaw, Bybee, Ikuta